IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICE MASON,<br><br>    Plaintiff,<br><br>v.<br><br>PHILADELPHIA PARKING AUTHORITY,<br><br>    Defendant. | CIVIL ACTION<br>NO. 18-1786 |

## OPINION

**Slomsky, J.**                                                                                                   **January 15, 2019**

### I.    INTRODUCTION

Plaintiff Alice Mason ("Plaintiff" or "Mason") brought this suit against her employer, the Philadelphia Parking Authority ("Defendant" or "Authority"). She was terminated after thirty years of employment. Several years prior to her termination, the Authority offered Mason admission to the Deferred Retirement Option Plan ("DROP")[1]. In exchange for agreeing to enter into DROP, the Authority guaranteed her employment in the same position at the Division where she worked for a four-year period. Mason accepted the offer and joined DROP. Two years after joining the program, the Authority sent Mason a letter stating that she would be terminated that month.

---

[1] When a public-sector employee enters into DROP, he or she ceases to make contributions to his or her current retirement system and instead monthly pension benefits are credited to a separate tax-deferred interest-bearing account. The interest rate on that account is determined by the Philadelphia Board of Pensions and Retirement. Once the employee retires, the money in the interest-bearing account is paid to him or her along with money accumulated in the employee's pension plan. PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT SUMMARY PLAN DESCRIPTION, https://www.phila.gov/pensions/PDF/Plan%2087.pdf, (updated May 2013).

1

Mason contends in this case that the Authority violated the terms of her DROP agreement. To vindicate her rights, she filed a Complaint (the "Complaint") in the Court of Common Pleas of Philadelphia County. In the Complaint, she asserted four state-law claims stemming from the Authority's alleged breach of its contract with her. Near the end of the Complaint, she alleged in one count civil rights violations pursuant to several federal statutes and the Due Process Clause of the Fifth and Fourteenth Amendments. In addition, in a section of the Complaint titled "Administrative Prerequisites Prior to Filing Suit," she also alleged discrimination based on age, sex and race because after being terminated she believed that she was not encouraged to apply for positions in other departments within the Authority while similarly situated Caucasian and younger employees were.

The Authority removed the action to this Court because it believed the Complaint raised a question of federal law. After removal, it filed a Motion to Dismiss the state-law claims and one of the federal claims.[2] In turn, Mason filed a Motion for Remand to File an Amended Complaint in state court deleting in the Amended Complaint any reference to federal claims. She did so after

---

[2] The Court accepts the fact that removal was proper based on the claims made in Count V and the section of the Complaint entitled: "Administrative Prerequisites Prior to Suit." In this section, Plaintiff noted that she filed complaints with the Philadelphia Commission on Human Relations ("PCHR" or "Philadelphia Commission") and the Pennsylvania Human Relations Commission ("PHRC" or "Pennsylvania Commission"). After filing suit in state court, and before Defendant responded, she withdrew the Petition filed with the PHRC and elected to proceed only with her charge with the PCHR. Plaintiff's counsel notes that she is not pursuing any claim with the Equal Employment Opportunity Commission ("EEOC") (Doc. No. 5 ¶ 7; Doc. No. 11 ¶ 7) even though her PCHR complaint contains an allegation that authorizes it "to serve [the] complaint upon the Respondent, investigate [the] complaint and the facts related thereto, and to file [the] complaint under the laws of the Pennsylvania Human Relations Commission and/or the [EEOC], if applicable." (Doc. No. 5-2 at 2.) Therefore, she has not received a "right to sue" letter, which is a prerequisite to filing a suit raising federal claims involving employment discrimination. Burgh v. Borough Council of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001); see also Filing a Lawsuit, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/employees/lawsuit.cfm (last visited: Jan. 11, 2019).

she filed suit in state court because she had no desire to proceed on the federal claims. She also filed a Motion for Dismissal of Federal Claims Pursuant to Rule 41(A). Mason seeks to have this case remanded to state court, where she will file an amended complaint omitting all federal-law claims and supporting allegations or, alternatively, to have all federal claims dismissed so that she can proceed on the original Complaint without references to any federal claims. She only wants to litigate her state-law claims.

## II. BACKGROUND

### a. Statement of Facts

During her thirty-year employment at the Philadelphia Parking Authority, Mason held many positions in different divisions. (Doc. No. 5-1 at 1.) At the time of her termination, she worked in the Taxicab and Limousine Division. (Id.) On January 30, 2015, due to financial constraints on the Division, the Authority's executive director offered Mason admission to its DROP program. In a letter addressed to her, the director stated:

> Per our conversation yesterday, I wanted to review the issues we discussed.
>
> As you are aware, there are significant financial constraints on the budget in the Taxicab & Limousine Division. While your contribution to the Division has been outstanding, your pension requirements make your continued assignment there infeasible. I also indicated that your employment with the Authority is not in jeopardy and that I would find a similar position for you. You expressed a desire to stay in the TLD [Taxicab & Limousine Division] so we explored an option that would make that possible.
>
> If you agree to enter the DROP program, enabling the Authority to eliminate the extraordinarily high pension payments, I will insure that you remain at the TLD for the remainder of your employment with the Authority. I am in no way insisting that you enroll in DROP at this time and if you elect not to do that I will offer you a position in another division. However, if you wish to enter DROP, you will keep [your] current TLD position for the duration of your four [year] DROP period.
>
> If you have any questions or wish to discuss this further, please contact me.

(Doc. No. 5-3 at 11) (alteration in original).

3

On March 18, 2015, Mason officially accepted the offer and entered into DROP. (Doc. No. 5-1 at 2.) That day, the agreement took effect. (Doc. No. 5-3 at 13.)

To confirm her acceptance, the Authority's Board of Pensions and Retirement sent a letter stating:

> Dear Member:
>
> Congratulations! You are accepted into DROP! Your DROP Start Date is June 19, 2018. Approximately ninety (90) days prior to your last day, you will receive correspondence from our office regarding preparations for your retirement. Once you make the decision to retire, please notify your Human Resources Department who will schedule your appointment for your exit interview at our office.
>
> Good luck in your remaining career with the City of Philadelphia.
>
> Sincerely,
>
> The Board of Pensions & Retirement

(Id.)

On July 1, 2017, over two years into the four-year period covered by the DROP agreement, the Authority sent Mason another letter stating its intention to terminate her. (Id. at 15-16.)

In this letter, the Authority's Senior Director of Human Resources wrote:

> On several occasions this year discussions have been held at the Taxicab & Limousine Division (TLD) to review the negative financial implications of the Act 164 of 2016. That law significantly reduced the level of funding available to support the TLD's regulatory duties.
>
> The impact of Act 164 cannot be overstated. There is simply no way that the TLD can continue to function as it has in consideration of that massive funding reduction. As a result, you have been advised to consider other employment and to apply for other open positions within the Authority. Some TLD employees have exercised one of those courses of action. As I am sure you have noticed, those departing TLD employees have not been replaced.
>
> The TLD's new fiscal year begins July 1, 2017. The state funding for fiscal year 2018 will not support even the current staff. It is with great regret that I inform you that your employment with the Authority will expire at the end of business on June

4

30, 2017. Again, you are urged to review the current open positions within the Authority and consider the submission of an application for one or more of those positions.

Please return all Philadelphia Parking Authority property in your possession to my office no later than Friday, June 30, 2017.

Please contact Saraann Haglund, Human Resources Senior Generalist, at (215) 683-9869 in the Human Resources Department to make an appointment regarding your entitlements.

The Authority is most appreciative of your past service and would like to wish you well in your future endeavors.

(Id.)

### b. The Complaint

Believing that the Authority breached its contract and engaged in other wrongs, Mason filed a Complaint in the Court of Common Pleas of Philadelphia County, alleging the following state-law claims: Count I, breach of employment contract; Count II, promissory estoppel; Count III, unjust enrichment; and Count IV, liquidated damages for unpaid wages.

The Complaint contains the following essential facts:

> 1. Plaintiff Alice Mason ("Plaintiff") is an African-American female senior citizen of the Commonwealth of Pennsylvania, residing therein at 7024 Cardin Road, Philadelphia PA 19128.
>
> 2. Plaintiff brings this lawsuit against the Philadelphia Parking Authority seeking declaratory and injunctive relief.
>
> 3. Defendant, the Philadelphia Parking Authority ("Authority"), [is] a body corporate and politic created under the laws of the Commonwealth of Pennsylvania in accordance with the Act of June 19, 2001, PL. 287, No. 22.
>
> 4. Plaintiff at all times relevant hereto was employed by Defendant Authority for approximately 30 years holding various titles during the course of her employment and worked most recently in the Authority's Taxicab and Limousine Division ("TLD").
>
> 5. On or about January 30, 2015, the Authority, through its Executive Director at the time, Vincent J. Fenerty Jr., authored a memorandum which provided a written offer for an employment contract to Mason. The Memorandum,

attached hereto as "Exhibit: A" and incorporated herein by reference, acknowledged certain financial constraints that plagued the TLD and lauded Plaintiff's outstanding commitment and service throughout the course of her career with the Authority.

      6. The Memorandum, acknowledged and offered that if Plaintiff took early retirement by entering the DROP Program, which would enable the Authority "to eliminate the extraordinarily high pension payments", Plaintiff would remain in her position at the TLD for the remainder of her employment with the Authority. Further, the effectuated memorandum guaranteed Mason would "keep her TLD position for the duration of your four (year) DROP period."

      7. The Memorandum also noted Plaintiff's job was not in jeopardy, and provided that if Plaintiff did not wish to enter the DROP Program at that time which again was reiterated if Plaintiff did elect early retirement by entering DROP her action would allow the Authority to eliminate her high pension payments- her position could be transferred to another division within the Authority but outside the TLD Division.

      8. At the time the Authority offered the employment agreement, Plaintiff had verbalized her desire to work for another two to three years at the Authority before entering DROP, which thereafter allows employees to work for a set additional term up to four more years. However, upon reflection and discussion of the Authority's offer contained in the January 30 memorandum, Plaintiff officially accepted the offer and entered the DROP program on March 18, 2015. The Philadelphia Board of Pensions and Retirement letter is attached hereto as Exhibit "B."[3]

      9. Plaintiff had an expectation of continued employment under the terms of her employment agreement with the Authority.

      10. Approximately two years into Plaintiff's four-year DROP period, the Authority provided express notice of its intent to breach its employment agreement with Plaintiff by termination her employment effective July 1, 2017. See attached Exhibit "C".

      11. The Authority breached the employment contract it maintained with Plaintiff.

      12. Plaintiff made demands for compensation pursuant to her employment agreement which provided for an expectation of two more years of work, accrual of DROP Benefits, personal benefits and additional compensation.

(Doc. No. 5-1 ¶¶ 1-12) (alteration in original).

---

[3]     The content of this letter is provided, supra.

6

Count I contains the following allegations with respect to breach of contract:

> 13. Plaintiff incorporates by reference Paragraphs 1 through 12 as if same were herein set forth at length.
>
> 14. Pursuant to the employment agreement by and between Plaintiff and the Authority as outlined herein, Plaintiff agreed to early retirement by entering the DROP Program approximately 2-3 years prior to when Plaintiff originally intended to do so thus making the Authority, at the Authority's request, not responsible for Plaintiff's pension payments.
>
> 15. Plaintiff performed all conditions precedent under the agreement.
>
> 16. Defendant has breached their obligations under the employment agreement maintained with Plaintiff by, inter alia, terminating Plaintiff's employment less than 24 months into the agreement.
>
> 17. As a result of the foregoing, Plaintiff's detrimental reliance entitles her to a declaratory judgment against Defendant plus pre- and post-judgment interest, attorney fees, court costs and consequential damages. [sic]

(Id. ¶¶ 13-17.)

Count II contains the following allegations with respect to promissory estoppel:

> 18. Plaintiff incorporates by reference Paragraphs 1 through 17 as if same were herein set forth at length.
>
> 19. Defendant knew their promise induced Plaintiff and similar situated employees to undertake or continue employment with Defendant.
>
> 20. Defendant should have reasonably expected their promises would induce Plaintiff to request specific performance pursuant to the employment agreement.
>
> 21. Plaintiff did in fact rely upon the benefit conferred by the employment agreement by entering DROP early.
>
> 22. Plaintiff has performed all conditions precedent.
>
> 23. Despite Plaintiff's demand, Defendant has violated and refused to honor the employment contract and their promised obligations.

7

24. As a result of the foregoing, Plaintiff's detrimental reliance entitles her to a declaratory judgment against Defendant, plus pre- and post-judgment interest, attorney fees, court costs and consequential damages.

25. Injustice can only be avoided by compensating Plaintiff for the damages suffered as a result of Defendant's breach of their promises to Plaintiff.

(Id. ¶¶ 18-25.)

Count III contains the following allegations with respect to unjust enrichment:

26. Plaintiff incorporates by reference Paragraphs 1 through 25 as if same were herein set forth at length.

27. Plaintiff has conferred a substantial benefit upon Defendant.

28. Defendant retained and enjoyed the benefit of Plaintiff's labor plus the benefit of not having to contribute to Plaintiff's pension costs.

29. The retention of the benefits of Plaintiff's labor and the benefit not having to contribute to Plaintiff's pension costs, without compensating Plaintiffs would be unjust.

(Id. ¶¶ 26-29.)

Count IV contains the following allegations with respect to unpaid wages and liquidated damages:

30. Plaintiff incorporates by reference Paragraphs 1 through 29 as if same were herein set forth at length.

31. The reasonable value of the benefits conferred by Plaintiff is approximately $250,000.00 in addition, to the value attributed to Plaintiff's damages for Defendant's breach of the employment agreement.

32. At all times relevant hereto, Plaintiff, was employed, under the sole direction, control and supervision of Defendant, the Philadelphia Parking Authority.

33. Plaintiff is presently owed approximately $250,000.00 by Defendant, plus additional damages herein claimed.

34. Despite Plaintiff's demands upon Defendant to pay the benefits due, Defendant has and continues to refuse to make payment to Plaintiff.

8

> 35. The benefits due to Plaintiff by Defendant constitute wages under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, and the action of Defendant constitutes a violation of the Pennsylvania Wage Payment and Collection Law.
>
> 36. In accordance with 43 P.S. § 260.10, in addition to the commissions, Plaintiff is entitled to liquidate damages in an amount equal to twenty-five percent of the wages due.
>
> 37. In accordance with 43 P.S. § 260.9a(f), owing to Defendant's actions, Plaintiff arise entitled to attorney's fees associated with this action. [sic]

(Id. ¶¶ 30-37.)

Count V of the Complaint alleged employment discrimination under Pennsylvania law, and civil rights violations under several federal statutes and the due processes clauses of the Fourth and Fifteenth Amendments to the United States Constitution.

It begins:

> 38. Plaintiff incorporates by reference Paragraphs 1 through 37 as if same were herein set forth at length.
>
> 39. This is an action for equitable relief and damages, to secure protection of and to redress deprivation of rights secured by the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. (alteration in original).
>
> 40. Jurisdiction is invoked pursuant to PHRA Act of 1955, P.L. 744, No. 222. As Amended June 25, 1997 BY ACT 34 OF 1997, 43 P.S. §§ 951-963 for claims arising under state law.
>
> 41. Venue is proper since the discriminatory acts giving rise to the claim occurred in this District and Plaintiff would have worked in this District but for the discriminatory conduct.

(Id. ¶¶ 38-41.)

Paragraph 42 in Count V is the only allegation of the Complaint that refers to federal statutes. It provides:

> Plaintiffs also bring this cause of action for a civil rights violation pursuant to 42 U.S.C. § 1983 for violations of their rights under the Due Process Clause of the V (Fifth) and XIV (Fourteenth) Amendments, 42 U.S.C. § 1988, and the Declaratory

9

> Judgments Act: 28 U.S.C. §§ 2201, 2202. See U.S. Const. amend. V and XIV. Plaintiffs seek declaratory and injunctive relief against Defendants' promulgation, enforcement and profiting from lack of due process and employment discrimination.

(Id. ¶ 42) (alteration in original).

Count V continues as follows:

> 43. Plaintiffs also bring this cause of action for a civil rights violation pursuant to the Philadelphia Fair Practices Ordinance. See Section 9-12101 – 9-3210 of the Philadelphia Code.

(Id. ¶ 43) (alteration in original).

The last section of the Complaint, titled "Administrative Prerequisities Prior to Suit" provides:

> 44. Plaintiff has filed a complaint alleging discrimination based on Race, Gender and Age against Defendant with the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 et seq. A copy of the PHRC's online complaint is attached hereto as Exhibit "D."
>
> 45. This charge will also be cross-filed with the Equal Employment Opportunity Commission ("EEOC") on or about the same date. Plaintiff will forward copies of the dual-filing within 30 days.
>
> 46. Plaintiff has filed a complaint alleging Civil Rights discrimination based on Race, Gender and Age against Defendant with the Philadelphia Fair Practices Ordinance. See Section 9-1101 – 9-3210 of the Philadelphia Code. See attached Exhibit "E."
>
> 47. The action of Defendant in termination Plaintiff's employment are in direct violation of Federal, State, and Philadelphia law.
>
> 48. As an African-American, female, and a senior citizen, Plaintiff is deemed a protected person and class under three categories: age, sex, and race.
>
> 49. When Plaintiff's employment was terminated effective July 1, 2017, Plaintiff incurred an adverse employment action.
>
> 50. As an employee of Defendant with close to three decades of experience working in various departments, Plaintiff was more than qualified for several

> vacant Analyst positions available in other departments at the time of her separation from Defendant.
>
> 51. Defendant neither informed Plaintiff of these vacancies, nor encouraged her to apply as they did to other similarly situated employees of TLD.
>
> 52. Those employees of the TLD who were encouraged to apply to those vacancies were all Caucasian and several decades younger than Plaintiff.

(Id. ¶¶ 44-52) (alteration in original).

In addition to seeking dismissal here of the allegations in Count V and the section of the Complaint titled "Administrative Prerequisites Prior to Suit," Plaintiff has filed a proposed amended Complaint ("Proposed Amended Complaint"), attached to the Motion For Remand to File an Amended Complaint (Doc. No. 5), which is to be filed in state court if the case is remanded. (Doc. No. 5-3.) The allegations in Counts I through IV of the Proposed Amended Complaint are an exact replica of the same counts in the original Complaint, which are copied above. The Proposed Amended Complaint only differs in that it omits Count V in its entirety and also the section titled "Administrative Prerequisites Prior to Suit." In summary, it removes all federal claims and all allegations of discrimination based on age, sex or race.

Before the Court are the following Motions: Plaintiff's Motion for Dismissal of Federal Claim Pursuant to Rule 41(a) (Doc. No. 11), Plaintiff's Motion For Remand to File an Amended Complaint (Doc. No. 5) and Defendant's Motion for Partial Dismissal (Doc. No. 4). The Motions are now ripe for decision. For the reasons that follow, Plaintiff's Motion for Dismissal of Federal Claim Pursuant to Rule 41(a) (Doc. No. 11) will be construed as a Motion For Dismissal of Federal Claims, and it will be granted. Plaintiff's Motion For Remand (Doc. No. 5) also will be granted. By granting these two Motions, the Court need not decide Defendant's Motion for Partial Dismissal (Doc. No. 4).

11

## III.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). As the party asserting jurisdiction, a defendant has the burden of showing at all stages of the litigation that the case is properly before the federal court. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In addition, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. 1367(c)(3).

## IV.  ANALYSIS

Plaintiff has filed a Motion for Dismissal of Federal Claims Pursuant to Rule 41(A) (Doc. No. 11) and a Motion for Remand to File an Amended Complaint (Doc. No. 5) in seeking to drop the federal allegations contained in Count V of the Complaint and the allegations of discrimination contained in the "Administrative Prerequisites Prior to Suit" section. The effect of granting both Motions will be that all federal claims are dropped in this case. In addition, Plaintiff has alleged that she is not pursuing any claims against Defendant before the EEOC. (Doc. No. 5 ¶ 7; Doc. No. 11 ¶ 7.) Therefore, no federal claim can arise because by not pursuing a filing with the EEOC, Plaintiff will not obtain a right-to-sue letter which, as discussed supra, is necessary to pursue any federal discrimination claim. In effect, by granting Plaintiff's Motions, the federal claims have been removed from this case. For this reason, original jurisdiction is defeated.

### A. The Motion For Dismissal of Federal Claims Will Be Granted

Although Plaintiff alleges that she has decided at this point to withdraw the federal claims without providing a more specific reason, it is evident from the face of the Complaint that the crux

12

of this case is a breach of contract dispute arising from the Authority's alleged breach of the DROP agreement. In this regard, Plaintiff's relief depends solely on whether the memorandum offering her admission to the DROP program constituted a contract, and further whether this purported contract was breached by the Authority's decision to terminate her early. Thus, it appears from the documents that the Authority made her an offer to enter DROP, she accepted, and there was consideration arising from the fact that she participated in DROP for two years, allowing the Authority to receive a benefit from her modified pension payments.[4]

Plaintiff seeks dismissal of the federal claims in a Motion she has titled "Plaintiff's Motion For Dismissal of Federal Claims Pursuant to Rule 41 A." Fed. R. Civ. P 41(a)[5]. This Rule applies to "actions" and not specific claims. The Motion only refers, however, to Fed. R. Civ. P. 41(a) in the title, not in the body of the Motion. (Doc. No. 11.) In effect, Plaintiff therefore is asking the Court to dismiss specific counts of the Complaint, and not the entire action. A Court may dismiss counts when warranted upon motion of a party. Thus, the Court will construe the Motion titled

---

[4] Although Plaintiff alleges at the end of the Complaint that she was discriminated against because the Authority encouraged other similarly situated Caucasian and younger employees to apply for vacancies within the organization, which she was not informed existed, it is clear that she was in fact encouraged to apply to other positions. Mason attached to her Proposed Amended Complaint the letter from the Authority's Senior Director of Human Resources, which states that her termination was due entirely to lack of funding. (Doc. No. 5-3 at 15-16.) Further, the letter encourages her to apply for positions in other divisions by stating ". . . you are urged to review the current open positions within the Authority and consider the submission of an application for one or more of those positions." (Id. at 15.)

[5] Fed. R. Civ. P. 41(a) provides in relevant part: "[t]he plaintiff may dismiss an action without court a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

13

"Plaintiff's Motion For Dismissal of Federal Claims Pursuant to Rule 41 A" as a Motion that seeks dismissal of the federal claims in this case.[6]

As noted, Plaintiff seeks to dismiss all federal claims in the original Complaint. After the case was filed in state court, and before Defendant responded, Plaintiff elected only to proceed with an administrative filing of a charge with the PCHR. (Doc. No. 5 ¶ 5.) She states in her Motion that she "does not currently maintain any claim or filing against Defendant in either the Pennsylvania Human Relations Commission or the Equal Employment Opportunity Commission." (Id. ¶ 7) (alteration in original). Apparently, she has not received a "right to sue" letter from the EEOC, which is necessary in order to pursue the federal employment discrimination claims. She is not pursuing these claims at this point, according to her counsel.

At this stage, considering the Motions (Doc. Nos. 5, 11) and the Proposed Amended Complaint that drops Count V and the section titled "Administrative Prerequisites Prior to Suit," it is clear that she only wishes to pursue her state-law claims and she will be permitted to do so by the Court granting both her Motions.

In Carnegie-Mellon Univ. v. Cohill, the Court held that a federal district court has discretion under the doctrine of pendent jurisdiction to remand a case to state court when all federal causes of action have been eliminated and only pendent state-law claims remain. 484 U.S. 343 (1988).

There,

> [r]espondents moved to amend their complaint to delete the allegations of age discrimination and defamation and the request for damages for loss of consortium. In this motion, respondents stated that they now believed these claims were not tenable. At the same time, respondents filed a motion, conditional upon amendment of the complaint, to remand the suit to state court. Respondents noted that the amendment would eliminate their sole federal-law claim, which had provided the

---

[6] Hereafter, the "Motion For Dismissal of Federal Claim Pursuant to Rule 41 A" will be referred to as the "Motion For Dismissal of Federal Claims."

14

basis for removal of the case, and argued that a remand to state court was appropriate in these circumstances.

Id. at 346.

The Court in Carnegie-Mellon Univ. noted that it was appropriate for a district court to dismiss the federal claims. Next, in deciding whether to maintain jurisdiction over the remaining pendent state-law claims or to remand them to state court, the Court noted that a district court should weigh the values of judicial economy, convenience, fairness and comity. Id. at 351. Specifically, it reasoned "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by [remanding] the case. . . ." Id. at 350. See also Hudson Bank v. Litenda Mortg. Corp., 142 F.3d 151,157 (3d Cir. 1998) ("In the present case, the district court issued a remand pursuant to 28 U.S.C. § 1367(c)[7], rather than 28 U.S.C. § 1447(c). Section 1367(c) grants district courts the discretion to refuse to exercise supplemental jurisdiction when 'values of judicial economy, convenience, fairness, and comity counsel that the district court remand state claims to a state forum. Because the original basis of federal jurisdiction in this case was the presence of Freddie Mac as a party, the district court exercised its discretion and declined to exercise supplemental jurisdiction over the state claims against LiTenda following the dismissal of the claims against Freddie Mac.'") (citations omitted)).[8]

---

[7] As provided earlier, 28 U.S.C. 1367(c)(3) provides, in relevant part: [t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ."

[8] Although in Carnegie-Mellon Univ., the party seeking dismissal of the federal claims "believed these claims were not tenable," and that allegation is not made here by Plaintiff, this distinction is not controlling. 484 U.S. at 346. As discussed above, it is clear that Plaintiff decided to

15

Remand is appropriate here because this case is still in its early stages. No answer to the Complaint has been filed and there has been no discovery on the merits of the case. Since this case involves only state-law claims, the federal claims having been dismissed, comity would suggest that they be litigated in state court. In addition, it is convenient and fair for the parties, with their strong connections to Philadelphia, to have the case litigated in state court. On balance, these factors point to the fact that remand of the state-law claims to state court is appropriate.

### B. The Motion for Remand to File an Amended Complaint Also Will Be Granted

The Court also will grant Plaintiff's Motion for Remand to File an Amended Complaint (Doc. No. 5) because the Proposed Amended Complaint is an exact replica of the original Complaint as set out in Counts I through IV, deleting Count V and the "Administrative Prerequisites Prior to Suit" section. It is evident that whether Plaintiff pursues her case in state court on the original Complaint as modified without reference to the federal claims or through the filing of the Proposed Amended Complaint, she is only pursuing state-law claims against the Authority.

### C. Plaintiff is Not Seeking Remand Through Manipulative Tactics

Defendant argues that Plaintiff is attempting to use manipulative tactics to eliminate the federal causes of action in order to have a more favorable forum. This argument is unpersuasive.

In Carnegie-Mellon Univ., supra, the Court noted that this kind of concern:

> [h]ardly justifies a categorical prohibition on the remand of cases involving state-law claims regardless of whether the plaintiff has attempted to manipulate the forum and regardless of the other circumstances in the case. A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance

---

pursue only the state-law causes of action, even before the case was removed to this Court. These would be the only claims remaining in this case after dismissal of her federal-law claims.

of factors to be considered under the pendent jurisdiction doctrine support a remand in the case. The district courts thus can guard against forum manipulation without a blanket rule that would prohibit the remand of all cases involving pendent state-law claims.

Carnegie-Mellon Univ., 484 U.S. at 357.

In this case, after filing the Complaint in state court and before Defendant filed a response or removed the case, Plaintiff decided only to pursue claims with the Philadelphia Commission. (Doc. No. 5 ¶ 5.) Despite the allegation in the PCHR complaint, which authorized her complaint to be cross-filed with the EEOC, (Doc. No. 5-2 ¶ 18), Plaintiff's counsel has stated in both Motions that "[p]laintiff does not currently maintain any claim, charge or filing against Defendant for any federal claim in either the Pennsylvania Commission, or the Equal Employment Opportunity Commission ("EEOC")," (Doc. No. 11 ¶ 7). As noted, a right-to-sue letter from the EEOC would be required to pursue federal employment discrimination claims and one has not been secured.[9] In addition, " [s]ubsequent to the filing of this cause of action, Plaintiff elected to only proceed with an [a]dministrative filing of her charge with the [PCHR]." (Doc. No. 5 ¶ 5.)

Given the facts of this case as alleged in the Complaint, which show that the crux of her claim is based upon the Authority terminating her in violation of the DROP agreement, and that for this reason she has a good faith basis to withdraw the federal claims, which she expressed her intention to do before the case was removed, the Court will not find that Plaintiff has engaged in manipulative tactics in order to move the case back to the forum in which it was originally filed.

V. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Dismissal of Federal Claims (Doc. No. 11) and Plaintiff's Motion for Remand to File an Amended Complaint (Doc. No. 5) will be granted.

---

[9] In the future, when the case is pending in state court, if Plaintiff adds federal employment discrimination claims, then Defendant again would have the right to remove the case to federal court.

17

Because these Motions are being granted, there is no need to rule on Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 4). Any challenge to the Counts alleging state-law claims may be pursued in state court. An appropriate Order follows.